1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  FERWILDA LANCASTER,                    Case No.  1:20-cv-01796-JLT-BAM

12                  Plaintiff,
                                           **FINDINGS AND RECOMMENDATIONS**
13          v.                             **REGARDING PLAINTIFF'S MOTION FOR**
                                           **SUMMARY JUDGMENT**
14  LELAND DUDEK, Acting Commissioner
    of Social Security,[1]                 (Docs. 22, 25)
15
16                  Defendant.

17

18

19                            **<u>INTRODUCTION</u>**

20          Plaintiff Ferwilda Lancaster ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner") denying her application for Supplemental

22  Security Income under Title XVI of the Social Security Act.  The parties' briefing on the motion was

23  submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and

24  recommendations.  (Docs. 22, 25, 26.)  Having considered the parties' briefs, along with the entire

25  record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was

26

27  _____
    [1] Leland Dudek became the Acting Commissioner of Social Security in February 2025.  Pursuant to
    Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Kilolo Kijakazi as
28  Defendant in this suit.

                                           1

not supported by substantial evidence in the record and was not based upon proper legal standards. Accordingly, this Court will recommend reversing the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff applied for Title XVI Supplemental Security Income on May 18, 2018, alleging that she became disabled on December 31, 2009.  AR 281-293. [2]  The claim was denied initially on September 14, 2018, and on reconsideration on December 14, 2018.  AR 141-154, 156-172.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Lynn Ginsberg held a hearing on April 29, 2020.  AR 82-115.  ALJ Ginsberg issued an order denying benefits on the basis that Plaintiff was not disabled on May 11, 2020.  AR 19-47.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 8-13.  This appeal followed.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 19-47.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of May 18, 2018.  AR 24.  The ALJ identified the following severe impairments: diabetes mellitus, asthma, hypertension, obesity, depression, lumbar disc degeneration, migraines, right hip degenerative joint disease, peripheral neuropathy, and bilateral knee disorder.  *Id.*  The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 25-28.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work except that Plaintiff could lift and carry no more than fifty pounds occasionally and twenty-five pounds frequently; could stand/walk for about six

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

hours and sit for six hours in an eight-hour workday with normal breaks; could occasionally climb ladders, ropes, and scaffolds; could frequently climb ramps or stairs; could frequently stoop, kneel, crouch, and crawl; could have occasional exposure to extreme cold, extreme heat, and environmental irritants such as fumes, odors, dust, and gases; could have occasional exposure to poorly ventilated areas and unprotected heights along with occasional use of moving hazardous machinery; could understand, remember, and carry out simple instructions that can be learned in up to, and including, thirty days of on-the-job training; could keep a sufficient pace to complete tasks and meet quotas typically found in unskilled work; could have only occasional interaction with the public and coworkers; and could adapt to occasional changes in the workplace.  AR 28.  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)."  AR 29.

The ALJ found that Plaintiff was unable to perform any past relevant work, Plaintiff was an individual of advanced age on the application date, Plaintiff had a limited education and was able to communicate in English, and that transferability of job skills was not an issue in this case because Plaintiff's past relevant work was unskilled.  AR 40-41.  Given Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  AR 41.  The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and residual functional capacity included: (1) Dining Room Attendant (DOT No. 311.677- 018, unskilled, medium exertion, with 55,000 positions in the national economy) and (2) Food Service Worker (DOT No. 319.677-014, unskilled, medium exertion, with 48,000 positions in the national economy).  *Id.*  The ALJ therefore concluded that Plaintiff had not been disabled from the application date of May 18, 2018, through the date of the decision.  *Id.*

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.

3

42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms, specifically regarding the severe impairment of migraine headaches. (Doc. 22 at 6-9, Doc. 26 at 1-3.)

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

**A. Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony. (*Id.*)  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 29-30.  However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. *Id.*  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

First, the ALJ found that Plaintiff's allegations were not fully consistent with the medical and other evidence, noting that Plaintiff's "alleged impairments with their accompanying symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the evidence of record as a whole." AR 30.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ summarized Plaintiff's migraine allegations as follows:

> The claimant testified she has migraines and low back pain. She indicated her migraines are her most prominent impairments, but she also has problems with her legs giving out. She stated she is afraid she will fall down. She reported she uses a cane on a daily basis. She reported she has a wheelchair from a previous injury and she uses it when she gets really tired. She stated she cannot stand more than ten minutes before her legs give out and she cannot walk for more than

fifteen minutes without her cane. She stated she can lift about twenty pounds. She reported she can lift a gallon of milk, but not two of them.

She testified her back pain comes and goes although she stated her daily pain level is 7 to 8 on a 10 point scale. She testified her migraines have decreased in severity, but continue to occur frequently and cause her to need to lay down to relieve pain. She testified strong chemicals and strong smells trigger her migraines. She stated neuropathy affects her right leg mostly and she has knee pain that goes down to the bottom of her leg. She reported having throbbing pain and that she uses a knee brace. With regard to asthma, she state she uses inhalers and a nebulizer and that her asthma is aggravated by changes in the weather or exposure to extreme cold or heat.

AR 29.  The ALJ also discussed Plaintiff's other allegations and continued by discussing the medical record and relatively normal findings in contrast to Plaintiff's symptoms allegations.  AR 29-36.  In contrasting Plaintiff's migraine allegations with the medical evidence, the ALJ noted:

The claimant was seen in the emergency room for complaints of migraines on November 4, 2018. She reported the migraine was not responding to Imitrex, but she felt better after receiving medications in the emergency room. Her head was normocephalic and atraumatic. Her oxygen saturation was 100 percent and she had normal respiratory findings. Her neck had normal range of motion. She had no neurological deficits. She had normal strength and no cranial nerve deficits. She displayed negative Romberg signs. She also had a normal mood and affect (Exhibit B11F)…

She was seen on December 17, 2018 at Family HealthCare Network regarding diabetes… She had no neurological deficits and moved all four extremities. She was alert and oriented. The claimant reported improvement with Imitrex and Naproxen. She stated her headaches were less frequent with the use of Topamax, but still there (Exhibit B16F)…

She saw Mark Menniti Stecker, M.D., a neurologist at Family HealthCare Network on March 15, 2019… Her MRI from February 2019 was reviewed and it was noted the study showed no apparent cause for her migraines. It was suspected that her depression and disturbed sleep were the primary causes for her headaches along with medication overuse (Exhibit B16F).

AR 33-34.

However, the cited medical evidence does not undermine Plaintiff's testimony regarding her migraines.  In the cited November 2018 emergency visit report, Plaintiff reported "having a left sided

6

headache for the past few days which became unbearable this morning along with some nausea. She took 2-50mg pills of lmitrex which did not relieve the pain therefore she came in. Feeling much better after receiving medications here in the ED." AR 467.  While the ALJ mentions the normal neurological and other findings in the report, the report also notes findings that Plaintiff was "Positive for nausea" and "Positive for headaches (left parietal)." AR 467-68.  Beyond some normal findings, the ALJ does not make clear how this emergency room treatment undermined Plaintiff's symptoms testimony regarding her migraines.  *See* AR 29, 33, 467-68.  Additionally, the ALJ cites a December 17, 2018 visit report as showing relatively normal findings and showing improvement with medications though her headaches persisted.  AR 33-34.  Although Plaintiff reported that the frequency of headaches had decreased, Plaintiff still reported that she was "still having migraine headaches," that the "intensity can get as high as 7/10," and that she felt her headaches had worsened after stress increased in her daily life.  AR 595.  Again, it is unclear how this report discredits Plaintiff's symptoms testimony.  The cited March 2019 visit report stated "Chronic daily migraine headaches - Daily headaches for the past 2 years, minimal relief with prophylactic and abortive therapy - Currently using Topomax 50 mg daily (increased by OSH), lmitrex, Naproxen, and Excedrin - MRI without apparent cause of migraine - Likely multifactorial 2/2 depression (suspect this is the primary factor) plus poor sleep (likely worsened by depression) plus medication overuse headaches plus possible OSA plus possible occipital neuralgia (TTP of L occiput)."  AR 606.  While the report could not identify the cause of the migraine, this does not discredit Plaintiff's testimony regarding her ongoing migraine symptoms.  The ALJ therefore did not properly use the medical evidence to discount Plaintiff's testimony.

    Second, the ALJ noted that Plaintiff's activities of daily living did not suggest the limitations that Plaintiff alleged.  AR 36.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds.  Even where a plaintiff's activities suggest some difficulty functioning,

7

they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims

of a totally debilitating impairment.  *Id*. at 1113.

Here, the ALJ wrote:

> A review of the record reflects no limitations in activities of daily living greater than those as reflected in the residual functional capacity as stated above. The claimant testified she lives with her son who suffers from psychosis and is unable to work. She also has two pets. The claimant stated she does things like watering the yard occasionally and she reads her Bible. She stated she does not cook, but she can prepare things like sandwiches. She indicated her brother-in-law, Anthony Young, is paid by the State to be her caregiver and he comes five days a week. Mr. Young helps her get in the bathtub and helps with general daily hygiene and shopping.

> The claimant submitted a function report in July 2018 in which she reported sleeping most of the day and needing help with basic activities, such as dressing and bathing. She was living alone at the time. She reported needing reminders to take her medications. She stated she could prepare simple meals for herself and she could wash her own clothes. She reported the ability to use public transportation and she could shop in stores, pay her bills, and count change. She reported having no interest in her hobbies any longer. She stated people came by to see her and check on her multiple times a week. She reported having a poor memory and concentration and that she did not follow directions well. She indicated she did not get along well with authority figures due to poor understanding and that she did not handle stress or changes in routine well (Exhibit B6E). The severity of her daily living are somewhat contradicted by the information the claimant provided to the consultative examiners (see Exhibits B2F and B3F).

> At her consultative examination on August 12, 2018, the claimant reported her adult son had moved in recently. She reported that she cooked and cleaned. She stated she has never had a driver's license. She indicated she shopped and performed her own activities of daily living without assistance and that she walked for exercise (Exhibit B2F).

> At her consultative evaluation on August 18, 2018, the claimant reported living with her son, whom she stated had psychosis. She indicated she did not need help with bathing, dressing, or grooming. She reported having adequate motivation for these tasks. She did not travel alone. She indicated she could manage money and she could prepare food for herself. She reported having a care giver that helped with cooking and cleaning (Exhibit B3F).

8

1    AR 36.

2         However, the Ninth Circuit has cautioned that a claimant's ability to complete minimal daily

3    activities does not detract from the claimant's credibility.  *See Cooper v. Bowen*, 815 F.2d 557, 561

4    (9th Cir. 1987) ("evidence that [claimant] could assist with some household chores was not

5    determinative of disability. 'Disability does not mean that a claimant must vegetate in a dark room

6    excluded from all forms of human and social activity.'") (quoting *Smith v. Califano*, 637 F.2d 968,

7    971 (3d Cir. 1981)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has

8    repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as

9    grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her

10   credibility as to her overall disability.").  As Plaintiff's daily activities – limited cooking, cleaning,

11   shopping – are the same as those the Ninth Circuit has cautioned against using to discredit Plaintiff's

12   testimony, the ALJ did not properly use Plaintiff's daily activities to discount Plaintiff's symptoms

13   testimony.

14        Defendant argues that the ALJ properly used evidence of effective medical treatment to

15   undermine Plaintiff's symptoms testimony.  (Doc. 25 at 7-8.)  An ALJ is permitted to consider

16   evidence of conservative treatment in evaluating a claimant's subjective complaints.  *See Parra v.*

17   *Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to

18   discount claimant's testimony regarding severity of impairment); *Warre v. Comm'r of Soc. Sec.*

19   *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with

20   medication are not disabling."); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness

21   and treatment history are relevant factors for evaluating a claimant's symptom testimony).  Yet, "the

22   fact that treatment may be routine or conservative is not a basis for finding subjective symptom

23   testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ

24   believes are available."  *Block v. Berryhill*, No. 2:16-cv-2230-EFB, 2018 WL 1567814 at *5 (E.D.

25   Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F.Supp.3d 1211, 1220 (D. Or. 2015); *see also*

26   *Wheeler v. Kijakazi*, No. 1:21-cv-1225 JLT BAM, 2023 WL 4146215, at *4 (E.D. Cal. June 23, 2023).

27        Here, the ALJ broadly notes that:

28

the undersigned considered the medications reported by the claimant and the information in this regard contained in the record evidence. The claimant's use of medications does not suggest the presence of an impairment that is more limiting than found in this decision. There is no evidence of any significant side effects of medications. Her medical records show that side effects have been addressed with medication adjustment. However, the residual functional capacity herein also has a limitation to her exposure to hazards, which would accommodate any reduced awareness, drowsiness, or dizziness that might be caused by medications.

AR 37.  The ALJ does not expressly state that Plaintiff's treatment was a factor in discounting Plaintiff's migraine symptoms testimony but discusses some of Plaintiff's migraine treatment in the decision.  AR 32-34.

The ALJ did not properly utilize conservative or effective treatment as a basis for discounting Plaintiff's symptoms testimony.  As a preliminary matter, the ALJ does not discuss the more aggressive treatment options that would be available to Plaintiff.  *Block*, 2018 WL 1567814 at *5. Additionally, it is unclear from the record that the treatment was effective or conservative.  The ALJ noted that an August 25, 2018 report noted that Plaintiff was provided with Imitrex which "provided significant symptomatic relief" and Plaintiff had normal findings at that visit.  AR 32.  Although the August 15, 2018 visit report notes that Plaintiff "was prescribed Imitrex which provides significant symptomatic relief," that report also states that Plaintiff "reported that since her last office visit, around more than one year ago, she has experienced re-emergence of her migraine headaches, localized to left side of her head, associated with nausea and blurry vision" and that the "intensity is usually 8/10 during the attacks, she has frequented urgent few times for her headaches."  AR 431.  The ALJ also noted that in Plaintiff's November 4, 2018 emergency room visit, "She reported the migraine was not responding to Imitrex, but she felt better after receiving medications in the emergency room." AR 33, 467-68.  The ALJ does not make clear how an emergency room visit and apparent ineffectiveness of Imitrex demonstrate effective or conservative control of Plaintiff's symptoms.  And although the ALJ notes that Plaintiff "reported improvement with Imitrex and Naproxen" in a December 17, 2018 visit, Plaintiff reported that she was "still having migraine headaches," that the "intensity can get as high as 7/10," and that she felt her headaches had worsened since having

increasing stress in her daily life. AR 33-34, 595. Effective control or conservative of treatment of Plaintiff's migraine symptoms was therefore not a proper basis for discounting Plaintiff's symptoms testimony.

Defendant further argues that the medical evidence in the record conflicted with Plaintiff's limitations, citing treatment notes and other exam findings in the record to bolster the ALJ's analysis. (Doc. 25 at 8-10.) While the record includes normal findings, the ALJ's decision does not make clear how those findings are used to discount Plaintiff's testimony regarding migraines. *See* AR 29-37. The Ninth Circuit has noted that "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). The Court therefore may not attempt to intuit the ALJ's reasoning in discounting Plaintiff's migraine symptoms testimony.

Defendant also argues that the ALJ properly considered the medical opinion evidence and prior administrative medical findings in discounting Plaintiff's symptoms testimony and formulating the RFC. (Doc. 25 at 11-16.) However, the ALJ did not utilize those opinions in discounting Plaintiff's symptoms testimony and instead merely evaluated the persuasiveness of those opinions. *See* AR 37-40. The Court will therefore not utilize those opinions to attempt to intuit the ALJ's reasoning in discounting Plaintiff's symptoms testimony. *Bray*, 554 F.3d at 1225.

As the ALJ failed to utilize or articulate proper bases for evaluating Plaintiff's symptoms testimony, the ALJ erred in assessing Plaintiff's symptoms testimony regarding migraines.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).  On remand, the ALJ should specifically address Plaintiff's symptoms testimony regarding her migraines.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED;

2.    The agency's determination to deny benefits be REVERSED; and

3.    The Clerk of this Court be directed to enter judgment in favor of Plaintiff Ferwilda Lancaster and against Defendant Leland Dudek, Acting Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered**.  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**April 22, 2025**__         ___/s/ Barbara A. McAuliffe___

UNITED STATES MAGISTRATE JUDGE